1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                  NORTHERN DISTRICT OF CALIFORNIA

7

8    BRIAN TRACEY HILL,                          No. C 01-1646 SI (pr)

9              Petitioner,                        **ORDER DENYING PETITION FOR
                                                  WRIT OF HABEAS CORPUS**
10        v.

11   GEORGE M. GALAZA, warden,

12             Respondent.
                                         /
13   ———————————————————————

14                          **INTRODUCTION**

15        This matter is now before the court for consideration of the merits of Brian Tracey Hill's

16   pro se petition for writ of habeas corpus challenging his 1997 conviction in the Alameda County

17   Superior Court.  For the reasons discussed below, the petition will be denied.

18

19                          **BACKGROUND**

20        At about 4:30 a.m. on August 12, 1994, Arthur Lee, a 50-year old homeless man, was

21   walking though a parking lot in Berkeley.  Brian Tracey Hill ran to Lee and attacked him with

22   a slag hammer.[1]  Hill swung the hammer so that the pointed end struck Lee in the chest, causing

23   a gaping hole in Lee's chest wall and penetrating his lung.  Hill was apprehended shortly

24   thereafter by police.  When the police approached him, the slag hammer fell from his waistband

25   area.  Hill told the officer that a man had tried to rob him and he hit the man with the hammer.

26   Hill was transported to the crime scene where Lee -- whose wound was being treated by

27   paramedics -- identified Hill as his attacker.

28   ————————————

     [1]A slag hammer is a welder's tool.  It is heavy, about 17 inches long, and has one flat end
     and one pointed end on its head.

At a jury trial in Alameda County Superior Court, Hill was convicted of assault with a deadly weapon, with enhancements for personal use of a deadly weapon, great bodily injury, and four prior convictions. See Cal. Pen. Code §§ 245(a), 667(a) & (e), 667.5(b), 969f, 1192.7(c), 12022.7. He was sentenced to 17 years in prison.

The California Court of Appeal remanded the matter for a sentencing issue but otherwise rejected Hill's arguments. The California Supreme Court denied Hill's petition for review. Hill's petitions for writ of habeas corpus were denied by the Alameda County Superior Court, California Court of Appeal, and the California Supreme Court.

In this action, Hill asserts the following claims: (1) his exclusion from a conference between the district attorney and the judge violated his due process and Sixth Amendment rights, (2) the Faretta advisement on October 3, 1997 was inadequate, (3) the denial of his request for a continuance on November 3, 1997 violated his right to due process, (4) the denial of his request for re-appointment of counsel on November 3, 1997 violated his right assistance of counsel, (5) the denial of his request for a continuance on November 14, 1997 violated his rights to due process and to present a defense, (6) he received ineffective assistance of appellate counsel, (7) the repeated changes of defense counsel and their incompetence denied him his rights to counsel, due process and a speedy trial, (8) his Faretta right and right of access to the courts were infringed when he was denied the ability to meaningfully prepare his defense while representing himself, (9) he was denied his Sixth Amendment right to counsel when the court denied his motion for appointment of counsel for the sentencing and motion for new trial, and (10) cumulative error. He also claimed that the trial court refused to adequately poll the jurors, but that claim was dismissed earlier because it was for a state law error.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, within this judicial district. 28 U.S.C. §§ 84, 2241 (d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the amended petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

3

federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

A.    The In-Chambers Proceeding Claim

Hill contends that the prosecutor and the trial judge engaged in an in camera proceeding without him being present, thereby violating his due process right to be present at a critical stage in the prosecution and his Sixth Amendment right to counsel. As will be shown below, the claim fails because Hill has not overcome the presumption of correctness of the state court's determination that no such proceeding occurred.

In the trial court, Hill switched back and forth between representation by counsel and self-representation. On the first day of jury selection and at a time when he was representing himself, Hill announced that he was not ready for trial and wanted a continuance. The trial court denied the motion for a continuance. Hill then asked the court to appoint new counsel. The court expressed some frustration with Hill's repeated changes of heart about self-representation and representation by counsel. The following then occurred, according to the transcript:

THE COURT: And you want the Court to appoint an attorney for you.

DEFENDANT HILL: That is the case, yes.

THE COURT: Then I'll see what I can do. Take him back in.

DEFENDANT HILL: Will I be able to have these in my file?

[PROSECUTOR] MS. HORN: Judge, can I bend your ear on this issue briefly?

THE COURT: Why don't you come on in.

(Court and counsel confer in chambers. Not reported.)

Resp. Exh. L, RT 48.

When Hill complained on appeal that there had been an in camera conference at which he was not present, the California Court of Appeal requested a settled statement of the oral proceedings at the unreported meeting. The trial court held a hearing on the matter, at which the judge said he recalled no in-chambers conference and the prosecutor said she recalled that she

4

did not get past the entrance of the judge's chambers before he rebuffed her: "I would describe it, perhaps, as the entrance to your chambers.  I walked in and asked you the question, 'What are you going to do,' because I was concerned about scheduling of witnesses and whether this trial was going to be continued or not.  But I didn't get to explain anything to you before you said very curtly to me, 'I'll make my ruling at the bench,' and I went and sat in the courtroom and waited."  Resp. Exh. M, RT 6.  The trial court provided this settled statement of facts: "First, the trial court did <u>not</u> have an 'in camera hearing' with the prosecutor in this case on the appellant's request for appointment of counsel.  The trial court went into chambers to quickly look up the procedural law on this issue and told the prosecutor to leave.  She [prosecutor] did not get past the threshold of the door to chambers. [¶] Secondly, the prosecutor made no attempt to talk to the trial court about the appellant's request in any way."  Resp. Exh. N, p. 3.

The California Court of Appeal used the settled statement of facts to reject Hill's claims about the impropriety of holding a conference in his absence.

> Here, the trial judge relied on his own recollection and the prosecutor's recollection to conclude he never had an in chambers discussion with the prosecutor regarding appellant's request for counsel. . . .  Since substantial evidence supports this finding, we must respect it on appeal.
>
> Nevertheless, appellant contends the reporter's transcript and the prosecutor's own proposed settled statement contradict the court[']s finding that "the prosecutor made no attempt to talk to the trial court about the appellant's request in any way."  But even if this is so, it is not relevant to the issue on appeal.  Even if the prosecutor "attempted" to talk with the trial court regarding appellant's request, the settled statement shows the court immediately rebuffed that attempt.  Thus, there was no in chambers conference from which appellant was excluded.

Resp. Exh. N, p. 5 (footnote omitted).

This court presumes correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Hill has not provided any evidence, let alone the clear and convincing evidence, to overcome the presumption of correctness of the state court's factual determinations that there was no discussion of his case and that the judge rebuffed the prosecutor when she attempted to ask him what he was going to do.  Hill's speculation about what might have been discussed does not overcome the presumption of correctness of the state court's determination

that nothing was discussed.  This court thus accepts the state court's factual findings that there was no in-chambers conference between the prosecutor and trial judge.  Like the state appellate court, this court does not see the prosecutor's unsuccessful attempt to ask a question and the judge rebuffing that effort as a conference or proceeding from which Hill was excluded.  Hill's constitutional claims based on the occurrence of a such a proceeding fail because they are unsupported by the facts.

B.     Claims Concerning Self-Representation And Counsel

        During the course of his criminal case, Hill went through many different appointed attorneys and had several periods during which he represented himself.  Ultimately, he represented himself at his trial.  Hill asserts several claims related to his self-representation and representation by counsel:  He claims that his <u>Faretta</u> waiver on October 3, 1997 was deficient. He claims that the denial of his request for re-appointment of counsel on November 3, 1997 violated his right to counsel.  He claims that the denial of his requests for continuances on November 3 and 14, 1997 violated his rights to due process and present a defense.  He claims that the multiple lawyer changes and the incompetence of those lawyers deprived him of his rights to counsel, to due process and to a speedy trial.  He claims that his right of access to the courts and his <u>Faretta</u> rights were infringed when he was not allowed to meaningfully prepare his defense when he was representing himself.  Finally, he claims that the denial of his motion for appointment of counsel for sentencing and a motion for new trial violated his right to counsel.  The facts underlying these claims are interrelated and it helps to see the overall picture before turning to the particular claims.

        1.     Background

        Throughout his case, which took more than three years to get to trial, Hill alternated between having court-appointed counsel and representing himself.  Hill went through eight different attorneys in that three-year period – all but two of the attorneys departed as a result of Hill's efforts to get rid of them.  The trial date was repeatedly continued in connection with the

1  changes in representation.

2      Hill was first represented by public defender Greg Syren.  On October 5, 1994, Hill asked

3  for new representation because he thought Syren was racist and "in cahoots" with the District

4  Attorney.  CT 3-4.  On October 27, 1994, Hill was arraigned and represented by public defender

5  Peter Brennan.  On April 14, 1995, Brennan was replaced by Adrienne Elenteny.  On May 12,

6  1995, Elenteny was replaced by John Costain.  On November 27, 1995, Costain was replaced

7  by Judith Brown.  On the December 4, 1995 trial date, Hill challenged Brown's representation

8  on the grounds that he had not had time to adequately confer with her.  The trial court granted

9  a continuance until December 8, 1995.  Brown was replaced by Ray Plumhoff, who obtained a

10  continuance until August 26, 1996.  Plumhoff was replaced by Steve Weinberg on August 22,

11  1996, who represented Hill until November 14, 1996.

12      On November 14, 1996, Hill informed the court that he no longer wished to be

13  represented by Weinberg and wanted to represent himself.  The court engaged in a Faretta

14  colloquy and then found that Hill knowingly waived his right to representation by counsel.

15  Resp. Exh. D, RT 2-5.  An investigator, Rosenblum, was appointed to assist Hill on November

16  14, 1996.  The court noted that Hill's trial date was set for January 13, 1997 and that Hill would

17  have to request a continuance if he wanted to have that date vacated.  On January 13, 1997, the

18  court granted Hill's motion for continuance and set the trial date for March 24, 1997.  On

19  February 28, 1997 and March 14, 1997, Hill filed motions pursuant to California Penal Code §

20  995 to challenge the indictment.  At the March 14 hearing, Hill informed the court that he would

21  be making a motion to continue the trial date.

22      Hill's case was transferred to a new judge on April 21, 1997 for trial.  The court took

23  Hill's motion for a continuance under submission.  On April 22, 1997, the court granted Hill's

24  motion for continuance and set the trial date for June 6, 1997.  The court also set a May 6

25  hearing date to allow Hill to review evidence with the investigator.  On May 8, 1997, Hill filed

26  a motion for advisory counsel, which the court took under submission.  The court denied Hill's

27  motion for advisory counsel on May 15, stating that "it appears that there is no need or purpose

28  for the defendant requesting advisory counsel.  The court observed the defendant's legal abilities

7

and it appears that Mr. Hill has represented himself in this case since November 14, 1996."
Resp. Exh. H, RT 1.  The court confirmed Hill's trial date of June 2, 1997.

Hill filed a motion for continuance on June 2, 1997.  Hill's trial date was continued to
July 7, 1997.  On July 7, Hill told the court that his case was still in the investigatory stage and
that he "wouldn't be looking to go to trial any time soon."  Resp. Exh. J, RT 2.  Hill refused the
court's offer to appoint counsel.  The court ordered the trial continued to July 18, 1997.

On July 18, 1997, Hill requested that an attorney be appointed to him.  On July 24, 1997,
the court appointed Trina Thompson to represent Hill and continued the matter to August 8,
1997.  On August 8, 1997, the court continued the matter to September 1, 1997.  On September
12, the court continued the matter to October 3, 1997.

On September 25, 1997, Hill requested the removal of attorney Thompson.  Hill stated
that he wanted to be interviewed by an attorney prior to having one assigned to him.  The court
informed him that the process didn't work that way and "if we appoint you an attorney, that's
your attorney.  However, you want to work it out with the attorney, that's up to you and the
attorney."  Resp. Exh. K, RT 3.  Hill then stated, "In light of that, I would like to proceed in pro
per."  Id.  The court offered to have court-appointed counsel interview Hill the following day,
however Hill reiterated that "I will go pro per from this point on" and that "I don't need to do
any thinking about it.  I'm prepared to go pro per right now until something else develops in my
case."  Id. at 6.  Finally, Hill agreed to speak with a court-appointed attorney before finalizing
his decision to represent himself.

On October 3, 1997, after consulting with two court-appointed attorneys, Trina Thompson
and Gary Sherrer, Hill decided to represent himself.  Resp. Exh. B, RT 4.  The trial court
engaged in another Faretta colloquy with Hill.  Id. at 5-6.  Hill withdrew his speedy trial waiver.
On October 31, the court re-appointed Rosenblum as Hill's investigator and informed Hill that
Rosenblum would contact him over the weekend.

On November 3, 1997, the day trial was set to begin, Hill requested a continuance on the
grounds that he had not been able to adequately prepare for trial due to limits on access to the
law library, telephones, and his investigator. He also contended that due to these problems, he

needed counsel to be re-appointed to represent him.  The court denied the requested continuance and denied the request for counsel.  The court found that the requests were made to delay and obstruct the administration of justice.  After Hill's requests were denied, the jury venire was brought to the courtroom to begin jury selection.

On November 14, 1997, just before closing arguments, Hill sought another continuance.  This time, he claimed he needed time for his investigator to try to subpoena defense witnesses.  The request was denied.

2.    Faretta Waiver on October 3, 1997

Hill asserts that the trial court failed to adequately advise him of the dangers and disadvantages of self-representation when it granted him leave to represent himself for the second time on October 3, 1997.  He points specifically to the fact that the trial judge did not mention that day the charges against him or the possible penalties associated with those charges.

A criminal defendant has a Sixth Amendment right to self-representation.  See Faretta v. California, 422 U.S. 806, 832 (1975).  The defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay.  See id. at 835; United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994).  While a trial judge may doubt the quality of representation that a defendant may provide for himself, the defendant must be allowed to exercise his right to self-representation "provided only that he knowingly and intelligently foregoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol."  See McKaskle v. Wiggins, 465 U.S. 168, 173 (1984).  Before letting a defendant represent himself, a state trial court must be assured that the defendant is "made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  Faretta, 422 U.S. at 835 (citation omitted); see also Iowa v. Tovar, 541 U.S. 77, 88, 94 (2004) ("States are free to adopt by statute, rule or decision any guides to the acceptance of an uncounseled plea they deem useful"); Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc) (neither the Constitution nor Faretta require a state court to engage in any particular

9

procedure or specific colloquy with the defendant; a federal habeas court only considers whether the state trial court made the defendant aware of the dangers and disadvantages of self-representation).

When, as here, the defendant has proceeded pro per and claims that he did not knowingly and voluntarily waive his right to counsel, the court follows the approach explained in Cordova v. Baca, 346 F.3d 924 (9th Cir. 2003).  If there was a defective waiver, the error is structural and relief must be granted.  Id. at 927-28; see, e.g., id. at 926 (habeas relief required without inquiry into harmlessness of error because the state court's conclusion that there was a defective waiver meant there was structural error (i.e., a denial of right to counsel)).  "[A] defective waiver waives nothing and thus is of no consequence."  Id.  However, if there was a defective waiver colloquy but there was a waiver nonetheless, the error is subject to harmless error analysis.  Id. at 926-28.  "Because the Supreme Court has not spoken to the consequences of a trial court's failure to give proper Faretta warnings, a state court would be entitled to conclude that a defective waiver colloquy does not automatically result in a defective waiver -- that a defendant's waiver was nonetheless knowing and voluntary, perhaps because defendant was well versed in the criminal justice process.  That, indeed, is the approach our own court has taken."  Id. at 926-27.

Before granting Hill's request to represent himself on October 3, 1997, the trial court engaged in a Faretta colloquy with Hill.  The court stated, "you understand the dangers of representing yourself, there's an experienced deputy district attorney who's going to be prosecuting the case.  I cannot give you any special privileges.  I have to treat you just as if you were an attorney." Exh. B, RT 5.  The court noted that it had given Hill a recent opportunity to talk to two attorneys before deciding to represent himself.[2]  The court noted (and Hill confirmed) that Hill previously had exercised his Faretta right.  The court determined that (based on the motions he had filed and the proceedings over the last several months) it was clear that Hill

---

[2]Hill's consultations with the two attorneys would have taken place not less than two weeks earlier, as the court had allowed the consultations at a September 25, 1997 hearing when Hill voiced a desire to represent himself.  Resp. Exh. K, RT 7-8.

could read and write, was of sound mind and understood the proceedings against him.  Exh B, RT 5-6.

Although the <u>Faretta</u> colloquy on October 3, 1997 was not lengthy, one must view it in context.  The most important contextual fact is that this was Hill's second effort at self-representation in this case.  The first time Hill decided to represent himself, on November 14, 1996,  he had a much lengthier <u>Faretta</u> colloquy with the judge and also completed a <u>Faretta</u> waiver form.  <u>See</u> Resp. Exh. D; CT 119-125.  At the November 14, 1996 hearing, Hill acknowledged that he understood his various constitutional rights, the charges against him, the possibility of a steeply enhanced sentence, that the prosecutor would be an experienced and trained adversary, that he would be required to abide by rules and procedures, that he would not receive special consideration by the court, that an attorney could help him with certain motions and defenses, that he would have to conduct all aspects of the trial himself, that he would not be able to raise on appeal his own ineffectiveness, and that self-representation was usually difficult and ill-advised.  Resp. Exh. D, RT 2-4; CT 119-125.  Hill hand-wrote on the <u>Faretta</u> form for the November 1996 proceeding that the pending charges were "245A1 GBI clause" and "various priors." CT 122. And he wrote that he understood that there were allegations that could result in enhancements of his sentence, including a potential of "25+ yrs to life" because of his prior convictions.  <u>See</u> CT 124.   Hill offers no explanation of why the advisements given in November 1996 orally and in writing were not known to him in October 1997.  It strains credulity to think that a criminal defendant, having been informed of the pending charges and potential penalties, would forget that information before trial.  The idea that Hill didn't know the charges and potential penalties is even less believable as his departing attorney made a record at the November 14, 1996 hearing that Hill already had received a copy of the preliminary hearing transcript, and the charging information.  Resp. Exh. D, RT 6.  Furthermore, Hill had the opportunity to consult with two lawyers shortly before choosing to represent himself again in October 1997.  Lastly, although he may not have represented himself in past cases, Hill was a seasoned criminal defendant with several prior convictions (in 1986, 1990, 1991, 1992, and 1994) familiar with the criminal justice system.

The record as a whole demonstrates that Hill knew what he was doing and made his choice knowingly and voluntarily.  The existence of evidence in the record in this case that Hill knew the disadvantages and dangers of self-representation coupled with the absence of any required script that must be read to a defendant leads this court to conclude that Hill did waive his right to counsel and there was no <u>Faretta</u> error.  The state court's rejection of Hill's claim was not an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court.  Hill is not entitled to habeas relief on this claim.

### 3.    Denial of Requests for Continuances and Counsel in November 1997

Hill asserts that the trial court's denial of his requests for continuances at the beginning and end of the trial, i.e., on  November 3, 1997 and November 14, 1997, violated his rights to due process and to present a defense, and (as to the November 3 ruling), to counsel.  Amend. Pet., p. 6D; attach. pp. 18-22, 25-26.

"The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . .  Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. . . .  There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964) (citations omitted); <u>see also</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 11-12 (1983) ("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel").  Even if the continuance was improperly denied, habeas relief is not available unless there is a showing of actual prejudice to petitioner's defense resulting from the refusal to grant a continuance.  <u>See</u> <u>Gallego v. McDaniel</u>, 124 F.3d 1065, 1072 (9th Cir. 1997).

In considering whether the denial of a continuance implicating a defendant's right to counsel is an abuse of discretion, the Ninth Circuit has applied these factors: (1) whether the continuance would inconvenience witnesses, the court, counsel, or the litigants; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant. See United States v. Mejia, 69 F.3d 309, 314 n.5 (9th Cir. 1995) (citing United States v. Robinson, 967 F.2d 287, 291 (9th Cir. 1992)); see also United States v. Garrett, 179 F.3d 1143, 1145-47 (9th Cir. 1999) (en banc).

a.      November 3 Requests For Continuance And Counsel

On November 3, 1997, the day trial was set to begin, Hill complained that he had experienced difficulties in preparing his case for trial.  He requested a continuance, stating, "in this particular instance, I feel at this point I just simply can't go on like this here, I mean, in representing myself in a court of law with all of these problems.  So I would ask that a continuance be given to me at this stage.  You can rule on that, if you want, right now and we can go on to the next issue."  Resp. Exh. L, RT 44.  After the court denied the request for a continuance, Hill requested that the court appoint another attorney for him.  Id.  The court responded, "I've tried to do that a couple of times and each time you indicated to the Court that the attorney is not doing what you feel is a good job in representing you.  And I indicated to you, when I allowed you to represent yourself, that this was the last time we were going to go through all of that."  Resp. Exh. L, RT  45.  After reflecting on the issue, the court denied Hill's request for counsel stating, "I believe Mr. Hill has abused [the right of self-representation and right to counsel] in his efforts to delay, obstruct and throttle the administration of justice . . . The Court has run out of patience.  It's clear to me that Mr. Hill is playing a game, that the game is to abuse the administration of justice."  Resp. Exh. L, RT 49.  The court then proceeded with preliminary remarks to the jury.  Id.

Applying the factors identified by the Ninth Circuit in Mejia to Hill's claims leads to the conclusion that this was not a case of a judge with a "myopic insistence upon expeditiousness

13

in the face of a justifiable request for delay." <u>Ungar</u>, 376 U.S. at 589.  There was no violation of Hill's Sixth or Fourteenth Amendment rights.

The continuance would have inconvenienced at least the court, counsel and prospective jurors.  The court was ready to start jury selection, and there were "75 jurors downstairs ready to go." Resp. Exh. L, RT 46.  The fact that Hill's trial was scheduled to start that day meant that a continuance would have disrupted the court's schedule.

The trial date had already been continued several times.  The case had been pending for 3-1/2 years by the time the November 3, 1997 trial date arrived.  There had been numerous trial dates set and vacated for various reasons, mostly due to Hill's vacillation between self-representation and representation by counsel and his dissatisfaction with the various attorneys who were appointed to represent him.

There were not legitimate reasons for the requested continuance.  Hill's request for a continuance was just another attempt to delay the trial.  Hill wants to focus on problems he had in the week or two before his November 3 request but that ignores that he had been acting as his own counsel for almost a year before that.  He had represented himself from November 14, 1996 until he requested an attorney represent him July 1997, who he asked to remove on September 25, 1997, and said he wanted to represent himself.  When Hill made his request for a continuance, he already had about ten months of his own representation (as well as many, many months of representation by counsel) in which to accomplish that which he was claiming he needed to do in November 1997.  Dragging one's feet until the last minute and then claiming unpreparedness because there isn't enough time to act is not a legitimate reason for a continuance.

The delay was attributable to Hill.  Although he contended that his minimal law library access hindered his ability to represent himself, Hill did not exercise reasonable diligence in preparing his case.  Hill's case had been pending for over three years and he had many months when he was representing himself to prepare his case.  He had received access to a private investigator, had been granted previous continuances, and was afforded some library and telephone access.  Even if he hadn't made good use of his law library visits or telephone

privileges, he had been to the law library repeatedly and made over a thousand telephone calls from jail in 1997. <u>See</u> Resp. Exhs. Q and S; CT 389. He also had received legal supplies and legal research materials on many occasions in 1997. <u>See</u> Resp. Exhs. T and U. His investigator had met with him and done work on his behalf in the months preceding the trial. <u>See</u> CT 282-284, 288-291.

Hill has failed to show how the denial of the continuance prejudiced him. He has not shown that he would have performed the requisite research or preparation that he had failed to do in the months prior to his request for a continuance. Nor has he shown that there was something that could have been done if granted a continuance that would have made a difference for his defense.

The denial of Hill's related request for re-appointment of counsel on November 3 did not violate his right to counsel. "There are times when the criminal justice system would be poorly served by allowing the defendant to reverse his course at the last minute and insist upon representation by counsel. . . . When, for example, for purposes of delay, criminal defendants have sought continuances on the eve of trial, we have refused to disrupt the proceedings to accommodate their wishes." <u>Menefield v. Borg</u>, 881 F.2d 696, 700 (9th Cir. 1989); <u>see</u> <u>United States v. Kelm</u>, 827 F.2d 1319, 1322 (9th Cir. 1987), <u>overruled on other grounds</u>, <u>United States v. Heredia</u>, 483 F.3d 913 (9th Cir. 2007). The trial court observed that Hill had "gone back and forth, in terms of [having counsel and self-representation], at his whim" and that this was an "effort[] to delay, obstruct and throttle the administration of justice." Resp. Exh. L, RT 49. This court's review of the record leads it to the same conclusion: counsel was being sought on November 3 only for the purpose of avoiding trial starting that day. Hill's Sixth Amendment right to counsel was not violated when the trial court denied his day-of-trial request for appointment of counsel.

b.    <u>November 14 Request For Continuance</u>

On November 14, 1997, prior to closing arguments, Hill requested another continuance, stating, "One other thing. I asked for a continuance and I've just said, on the record, regarding

[the investigator] having problems getting the people I need in and I was never given sufficient time.  I didn't even know who my investigator were [sic] formally until last week, two days before trial."  Resp. Exh. B, RT 393.  The court denied the continuance.

Applying the factors identified by the Ninth Circuit in <u>Mejia</u> to this claim leads to the conclusion that this was not a case of a judge with a "myopic insistence upon expeditiousness in the face of a justifiable request for delay."  <u>Ungar</u>, 376 U.S. at 589.  There was no violation of Hill's Sixth or Fourteenth Amendment rights.

The continuance would have inconvenienced at least the court, counsel and jurors, as the trial already had been in progress for more than a week and was nearing its end.  As explained above, other continuances of the trial date had been granted.  There was not a legitimate reason for the delay, as Hill had months of self-representation during which he could have attempted to locate the witnesses.  Finally, he hasn't shown prejudice.  Hill allegedly wanted a continuance to find witnesses, but he hasn't shown what the witnesses' testimony would have been, that their testimony would have been competent and relevant, that the witnesses probably could have been obtained if the continuance was granted, and that due diligence had been used to obtain their attendance on the day set for trial.  <u>See</u> <u>United States v. Hoyos,</u> 573 F.2d 1111, 1114 (9th Cir. 1978).  Although Hill speculates that the witnesses could testify regarding the "life threatening" character of the victim's injuries (Amend. Pet. attach., p. 21-22), he presents no evidence that they <u>would</u> have contradicted the existing evidence that victim's injuries were life threatening.  In any event, Hill's criminal liability did not depend on the injuries being life-threatening, because the sentence enhancement alleged was for the infliction of great bodily injury, which was statutorily defined as "a significant or substantial injury." Cal. Penal Code § 12022.7(f).  Hill also thinks these potential witnesses might have undermined the victim's identification of him, but he only speculates as to what their testimony might have been.  Moreover, Hill's admission to a police officer on the night of the crime that he <u>did</u> hit the victim (albeit in self-defense) casts doubt on the viability of any challenge to the victim's identification of Hill as his attacker.  No prejudice resulted from the failure to grant the continuance.

The California court's rejection of Hill's claims concerning the November 3 and 14 denials of his motions for continuances and his November 3 request for re-appointment of counsel was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the U.S. Supreme Court.  He is not entitled to the writ.

### 4.   Law Library Access

Hill asserts that he had inadequate access to the law library, which violated his rights to self-representation and access to the courts.  Amend. Pet. attach., pp. 23-24.

This claim runs into the insurmountable hurdle posed by Kane v. Espitia, 546 U.S. 9 (2005), which rejected under § 2254(d) a similar claim that a criminal defendant's lack of access to the law library violated his Faretta right.  Although there is a split in the circuit courts as to whether Faretta implies a right of a self-represented defendant to have access to a law library, "it is clear that Faretta does not, as § 2254(d)(1) requires, 'clearly establis[h]' the law library access right.  In fact, Faretta says nothing about any specific legal aid that the State owes a pro se criminal defendant."  Espitia, 546 U.S. at 10.  Hill's Faretta-based claim fails for lack of clearly established law on the point from the Supreme Court.

To the extent Hill tries to base his claim on the constitutional right of access to the courts, he fares no better.  An inmate has a constitutional right of access to the courts.  See Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977).  To establish a claim for any violation of the right of access to the courts, the inmate must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury.  See Lewis, 518 U.S. at 350-55.  The constitutional right is one of access to the courts and there is no freestanding right to the means to that end; thus, for example, there is no right to a law library or to a particular legal access program.  Lewis endorsed the idea of continued local experimentation of assuring access to the courts by, for example, replacing law libraries with minimal access to legal advice and court-approved forms.  Id at 352. Various circuits, including the Ninth Circuit, have concluded that making legal assistance available at government expense, if required, provides a constitutionally permissible means of access to the court.  See United

States v. Wilson, 690 F.2d 1267, 1271 (9th Cir. 1982). "When such adequate access is provided, as was here, an inmate may not reject the method provided and insist on an avenue of his or her choosing." Id. "The offer of court-appointed counsel to represent [defendant] satisfied the Fifth Amendment obligation to provide meaningful access to the courts." Id. at 1272.  The court-appointed counsel that was available to Hill comported with Lewis' vision of varying local methods that provided access to the courts.  Hill's choice to not use the court-appointed counsel available did not mean that the state had to provide the means for him to pursue his alternative course of action.  Further, the applicability of a "right of access to the courts" is questionable in the context of a criminal defendant's defense of his case; the state is pursuing charges against him and he is not trying to present a claim against the state or its agents.  Cf. Lewis, 518 U.S. at 354 (constitutional right does not include a right to litigate effectively once in court).

In addition to the absence of clearly established law that is fatal to Hill's claims, Hill has not addressed the substantial evidence from respondent that legal resources were made available to him.  Respondent submitted evidence showing that Hill did receive access to the law library, did receive telephone call time, did receive legal research help, did receive the services of an investigator, and did receive legal supplies.  See Resp. Exhs. Q-U.  Although perhaps not as much access as Hill would have liked, he did have some access to these resources.  He is not entitled to habeas relief on this claim.

### 5.   Denial of Post-Trial Counsel

Hill claims that the trial court violated his right to counsel when it denied his motion for re-appointment of counsel to represent him at the sentencing and motion for new trial.  After trial, Hill's sentencing was set for December 1997.  That month, he moved for a continuance, for appointment of counsel to represent him on appeal, for appointment of counsel for post-trial proceedings, for a stay pursuant to Penal Code § 1368 so that his competence could be assessed, and for a new trial.  See CT 342-358.  The court explained that appointment of counsel for appeal would be arranged at the Court of Appeal, and denied all the other motions.  As to the motion for re-appointment of counsel in the trial court, the court stated:

18

THE COURT: All right. Matter being submitted then, with respect to the defense motion to appoint counsel for post-trial proceedings, the Court makes the distinction between a genuine request to appoint counsel and a disingenuous request for counsel only to delay, confuse the proceedings. [¶] The Court finds that the defendant has, in the past, and continues to engage in the latter category. The Court has already found that the defendant has abused the administration of counsel [sic] and abused his right to counsel versus his right to represent him [sic] accordingly and has unreasonably delayed the administration of justice, as I have found before.

CT 374.

The Sixth Amendment right to counsel applies to all critical stages of the criminal prosecution, including the sentencing and a motion for new trial. See Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004); Menefield v. Borg, 881 F.2d 696, 697-98 (9th Cir. 1989). Although the right to counsel, once waived, is no longer absolute, there is a "strong presumption that a defendant's post-trial request for the assistance of an attorney should not be refused." Menefield, 881 F.2d at 700. Concerns about the delay incident to appointment of counsel are much less significant after trial than when the request is made on the eve of trial. Robinson, 360 F.3d at 1058. "[P]ost-verdict continuances were far less likely to 'substantially interfere with the court's or the parties' schedules.'" Id. (quoting Menefield, 881 F.2d at 700-01). "'In the absence of extraordinary circumstances,' a defendant's post-trial revocation of his waiver should be allowed unless the government can show that the request is made 'for a bad faith purpose.'" Id. (quoting Menefield, 881 F.2d at 701).

The trial court implicitly found that Hill's request for reappointment of counsel was made in bad faith when it found that the request was made only to delay the administration of justice and confuse the proceedings. That conclusion is amply supported by the record – a record that showed that proceedings had repeatedly been continued in connection with Hill's repeated changes of appointed counsel and repeated switches between self-representation and representation by counsel. The record also does not include any explanation by Hill as to why he had changed his mind yet again; although such an explanation is not necessary, the absence of it under the circumstances provides support for the belief that Hill's newly professed need for counsel was done simply to delay and obstruct justice rather than that Hill had come to believe in a need for the assistance of counsel. And Hill's simultaneous motion for a stay pursuant to

1   Penal Code § 1368 provides further support for the belief that his main goal was to thwart the
2   conclusion of his criminal case.

3          That Hill was trying to impede the administration of justice also is evident from his
4   closing argument at trial, which was a rather obvious effort to cause a mistrial or to get the jury
5   to decide his case on some basis other than the merits.  <u>See</u> RT 454-476.  Hill repeatedly argued
6   that he had been denied counsel and his ability to represent himself, that the court had been
7   biased against him, that he was facing life imprisonment, and that the prosecutor and judge were
8   "liars."  RT 459.

9          Another piece of evidence showing that Hill was trying to impede the administration of
10  justice comes from a second criminal case Hill had pending immediately after this case.  In the
11  second case – involving a charge of assault based Hill's attack on a deputy on the day the verdict
12  was read in this case – Hill wrote a letter to a fellow jail inmate stating, 'Yes I made a major
13  mistake in re: the incident.  They may file, if they do I'll proceed in pro-per, drag the case a
14  couple of years.  They don't want that.'"  <u>Hill v. Cambra</u>, No. C 03-3403 SI, Order Denying
15  Habeas Petition, p. 11.  This is powerful proof that Hill was trying to take advantage of the
16  <u>Faretta</u> and Sixth Amendment rights to obstruct the administration of justice.

17         The state court's rejection of the claim was not an unreasonable application of or contrary
18  to any clearly established federal law as determined by the Supreme Court.  Hill is not entitled
19  to the writ on this claim.

20

21         6.     <u>Multiple Lawyers</u>

22         Hill claims that his rights to effective assistance of counsel, due process and a speedy trial
23  were violated by the incompetence and "multiple changes in court-appointed counsel."  Amend.
24  Pet., attach., p. 14.  As noted above, eight different attorneys represented Hill during the 3-1/2
25  years his criminal case was pending.   His claim identifies no particular wrongdoing by any
26  particular attorney and instead lumps them together and suggests that the harm from multiple
27  changes in attorneys is self-evident.

28

The Sixth Amendment right to counsel guarantees effective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.  A habeas petitioner must establish two things to prevail on a Sixth Amendment ineffectiveness claim: (1)  that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, Id. at 687-688; and (2) that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  Savage v. Estelle, 924 F.2d 1459, 1466 (9th Cir. 1990) (quoting Faretta v. California, 422 U.S. 806, 834-35 n.46 (1975)).

These principles are fatal to Hill's contention that his Sixth Amendment rights were violated by the sheer number of attorneys appointed to represent him.  Because Hill ultimately represented himself at trial, the performance of all the attorneys who had represented him before then is largely irrelevant and he cannot complain about the quality of the defense he mustered for himself.  Strickland makes clear that the ineffectiveness inquiry is made in relation to the trial that actually occurred.  Unless an attorney had done something that irreparably damaged Hill's case, any misstep by a former attorney is largely irrelevant because it could be corrected later by counsel or Hill before it had any effect at trial.  Hill has not shown that any attorney did something irreparably damaging to his case.  Hill states that some of his witnesses could not be located for trial, but that problem appears more due to his lack of efforts to track down those witnesses in the many months he represented himself rather than anything done by any attorney who earlier represented him.  Similarly, he has not shown that any of the several attorneys caused him to lose the opportunity to file any motion that would have succeeded in making any difference to his defense.  Hill fails to show either deficient performance or resulting prejudice as to the performance of any or all of the attorney who represented him.  The Sixth Amendment's right to counsel provides no source of relief for Hill.

Hill's contention that the counsel changes violated his right to a speedy trial also fails. A speedy trial is a fundamental right guaranteed by the Sixth Amendment to the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the states. Klopfer v. North Carolina, 386 U.S. 213, 223 (1967). No per se rule has been devised to determine whether the right to a speedy trial has been violated. Instead, courts must apply a flexible functional analysis, Barker v. Wingo, 407 U.S. 514, 522, 530 (1972), and consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Doggett v. United States, 505 U.S. 647, 651 (1992); Barker, 407 U.S. at 530; United States v. Lam, 251 F.3d 852, 855, amended, 262 F.3d 1033 (9th Cir. 2001). The length of the delay is to some extent a triggering mechanism. Unless there is some delay which is "presumptively prejudicial," there is no necessity for inquiry into the other factors. Doggett, 505 U.S. at 651-52. Presumptive prejudice is not dispositive and instead is simply part of the mix of relevant facts and its importance increases with the length of the delay. United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003). Depending on the nature of the charges, the lower courts have generally found post-accusation delay presumptively prejudicial at least as it approaches one year. Doggett, 505 U.S. at 652 n.1; see, e.g., McNeely v. Blanas, 336 F.3d 822, 826 (9th Cir. 2003) (three-year delay was presumptively prejudicial); Gregory, 322 F.3d at 1162 (22-month delay between first superseding indictment and trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long).

Applying the Barker factors here leads to a conclusion that Hill's right to a speedy trial was not violated because of the lawyer changes. He was the cause of most of the changes in counsel. Hill was arrested on the day of the incident, August 12, 1994, and his trial did not begin until November 1997 – a period of 39 months. Hill was the cause of the vast majority of the delay, as he requested six of the eight lawyer changes that occurred. He filed a Marsden motion against his first attorney (Greg Syren) just ten days after the arraignment. He filed a Marsden motion against his second attorney (Peter Brennan) three days after Brennan first appeared. He filed a Marsden motion against his fifth attorney (Judith Browne) after less than a month of

being represented by her.  Hill filed a <u>Faretta</u> motion after several months of being represented by his sixth attorney (Ray Plumhoff), then withdrew that motion, but at some later point, Plumhoff was replaced as counsel.  Hill filed a <u>Faretta</u> motion after several months of being represented by his seventh attorney (Steve Weinberg), and that request was granted on November 14, 1996.  Hill represented himself until he requested reappointment of counsel on July 18, 1997.  After a couple of months of representation by his eighth attorney (Trina Thompson), Hill filed another <u>Faretta</u> motion as well as a request for new counsel.  The trial court found that Hill's repeated changes of counsel, and switches between self-representation and counsel were part of "his efforts to delay, obstruct and throttle the administration of justice." Resp. Exh. L, RT 49.  Elsewhere, the court observed that the case "is almost tragically simple;" when Hill complained, "if it was that simple, I don't think it would have been going on for three years," the judge responded, "that's primarily because of your stalling."  CT 166-167.  Hill also requested numerous continuances, including seven requests in 1997 (i.e., on January 13, February 28, March 14, April 21, June 2, July 18, and November 3, 1997).  <u>See</u> CT 129, 165-166 (continuance requested and then withdrawn), 172, 174, 199, 230 (continuance needed because defendant needs counsel appointed and counsel will need time to prepare a defense), 259, 293. Hill also  waived time several times.  CT 86, 167.  It also does not appear that Hill asserted his speedy trial right in state court after his initial protests in 1994 that the preliminary hearing was not held in a timely manner until he withdrew his time waiver in October 1997.  Finally, Hill has not shown prejudice from the 3-1/2 year period between his arrest and trial.

The California court's rejection of Hill's claims that his several attorney changes denied him effective assistance of counsel and denied him a speedy trial was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Hill is not entitled to the writ on this claim.

C.      <u>Ineffective Assistance of Appellate Counsel</u>

Hill contends that his appellate counsel rendered ineffective assistance because he (1) only raised the issue of the alleged in chambers conference between the prosecutor and the

judge, and (2) did not file a petition for review in the Supreme Court of California.  Pet., p. 6-E.

The Due Process Clause guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  See generally Evitts v. Lucey, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland, 466 U.S. 668.  See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). Hill therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  See id. at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694).  The Constitution does not require appellate counsel to raise every colorable or non-frivolous claim; to the contrary, effective appellate advocacy involves weeding out weaker claims in order to focus on stronger ones.  See id.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice because he declined to raise a weak issue.  See id.  That is the case here.

Hill argues that he was denied the effective assistance of counsel on appeal because appellate counsel failed to raise on appeal the issues he raises here.  As discussed above, Hill's claims have no merit.  Raising those claims on direct appeal might not have been patently frivolous, but would not have led to a reasonable probability of a different outcome on appeal. It was not ineffective assistance for appellate counsel to avoid raising the weak claims.

Hill's argument that appellate counsel was ineffective in not filing a petition for review in the California Supreme Court fares no better because he had no constitutional right to counsel at that stage.  A criminal defendant is not constitutionally entitled to counsel to file a petition for discretionary review, in this case, with the California Supreme Court.  Ross v. Moffitt, 417 U.S. 600, 617-618 (1974); see Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (no right to counsel when pursuing discretionary state appeal) Miller v. Keeney, 882 F.2d 1428, 1430-1433 (9th Cir. 1989).  "Because Moffitt found there to be no right to counsel in connection with the filing of certiorari petitions, there must be no corresponding right to the effective assistance of counsel." Miller, 883 F.2d at 1432 (quoting Wainwright v. Torna, 455 U.S. 586, 587-588 (1982)).  Hill is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

D.      Cumulative Error Claim

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  See McDowell v. Calderon, 107 F.3d 1351, 1368 (9th Cir.) (cumulative effect of errors may deprive habeas petitioner of due process right to fair trial), amended, 116 F.3d 364 (9th Cir. 1997), vacated in part by 130 F.3d 833, 835 (9th Cir. 1997) (en banc); United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996) (prejudice resulting from cumulative effect of improper vouching by prosecutor, improper comment by prosecutor about defense counsel, and improper admission of evidence previously ruled inadmissible required reversal even though each error evaluated alone might not have warranted reversal).  Cumulative error is more likely to be found prejudicial when the government's case is weak.  See id.  No individual error occurred in Hill's trial, so there are no errors to accumulate and consider under the cumulative error doctrine.  Hill is not entitled to relief under the cumulative error doctrine.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 31, 2007                         _____
                                                SUSAN ILLSTON
                                                United States District Judge